IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| The American Civil Liberties Union of Michigan, on behalf of themselves and all others similarly situated,<br><br>Plaintiff<br>vs.<br><br>John Does 1-6,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND EMERGENCY DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff American Civil Liberties Union of Michigan ("ACLU") on behalf of itself and its members, by and through counsel, file this complaint for injunctive relief against Defendants John Does, and allege upon information and belief as follow

## INTRODUCTION

1. Like the 2020 Presidential election, which resulted in the January 6, 2021 attack on the U.S. Capitol, and which involved a sustained and organized campaign to undermine the will of the voters in Michigan including by an attempt to provoke a riot in order to stop the counting of absentee ballots in Detroit,[1] the 2024 election is set to be emotionally charged for many voters. Concerns about election officials' security due to ongoing threats,[2] beliefs that the 2020 election was stolen,[3] and attempts to intimidate voters remain matters of the utmost concern, raising anxiety about the upcoming presidential election. The atmosphere undergirding this election has only been heightened by candidates sowing doubt regarding the election's fairness,[4] as well as promising to deploy their own election workers to monitor poll sites after repeatedly, and falsely, telling such individuals that previous elections have been stolen and that the current one is at similar risk.[5] Indeed, in a virtual meeting for

---

[1] Ryan J. Reilly & Jane C. Timm, *How Trump Allies Stoked Election Chaos in Detroit in 2020 — and What They're Planning in 2024*, NBC News (Oct. 16, 2024), https://www.nbcnews.com/politics/2024-election/trump-election-chaos-detroit-misinformation-rcna174091.

[2] Ruby Edlin & Lawrence Norden, *Poll of Election Officials Finds Concerns About Safety, Political Interference*, The Brennan Ctr. for Just. (May 1, 2024), https://www.brennancenter.org/our-work/analysis-opinion/poll-election-officials-finds-concerns-about-safety-political.

[3] Ben Kamisar, *Almost a Third of Americans Still Believe the 2020 Election Result was Fraudulent*, NBC News: Meet the Press Blog (June 20, 2023), https://www.nbcnews.com/meet-the-press/meetthepressblog/almost-third-americans-still-believe-2020-election-result-was-fraudule-rcna90145.

[4] In an interview, Former President Trump stated he would accept the results of the election "[i]f everything's honest." Clarissa-Jan Lim, *What Trump Really Means When He Says He Wants an "Honest" Election*, MSNBC (May 2, 2024, 1:53 PM), https://www.msnbc.com/top-stories/latest/trump-2024-election-results-honest-wisconsin-rcna150385. *See also* Stephen Collinson, *Top Republicans Are Already Rushing to Buy into Trump's 2024 Election Fraud Narrative*, CNN (May 24, 2024, 12:17 AM) https://www.cnn.com/2024/05/23/politics/republicans-2024-election-analysis/index.html (reporting on a range of Republican officials sowing doubts regarding the integrity of the 2024 election, including Vice Presidential Nominee J.D. Vance, who stated Republicans will accept the election results "if it's a free and fair election"); Daniel Arkin, *Trump Says He'll Accept 2024 Results if They're 'Fair and Legal' While Airing False 2020 Fraud Claims*, NBC NEWS (June 27, 2024, 11:12 PM) https://www.nbcnews.com/politics/donald-trump/trump-says-accept-2024-results-fair-legal-airing-false-2020-fraud-clai-rcna159372 ("CNN debate moderator Dana Bash asked Trump three times whether he would accept the 2024 election results. He did not directly answer the question the first two times, but on her third attempt, Trump said in part: 'If it's a fair and legal and good election, absolutely.'"). Michigan Republican Party Chairman Pete Hoekstra voiced concerns in September that Democrats "will steal some votes" during the 2024 election. Craig Mauger & Hannah Mackay, *Top Michigan Republican Already Warns of a Stolen Election*, THE DETROIT NEWS (Sept. 26, 2024, 6:11 PM) https://www.detroitnews.com/story/news/politics/2024/09/26/donald-trump-pete-hoekstra-michigan-stolen-election-claim-democracy-jocelyn-benson-republican/75392441007/.

[5] Alex Isenstadt, *Trump Campaign Says it Will Deploy Thousands of Election Workers to Monitor Poll Sites*, Politico (Apr. 19, 2024, 5:00 AM), https://www.politico.com/news/2024/04/19/trump-campaign-election-monitoring-00153217.

prospective poll workers, the RNC's director of election integrity for Michigan said she so distrusted the Detroit election infrastructure that "if I could get away with . . . burning [Detroit] to the ground, I would try."[6] Succumbing to this febrile atmosphere, Defendants are actively engaged in activities to threaten, intimidate, harass, and deter voters like Plaintiff ACLU's members from participating in the 2024 election.

2. Defendants, by engaging in intimidating behavior including travelling to multiple polling locations and illegally recording voters inside polling locations, following a voter to her car as she exited a polling place, and threatening that violence may befall the child of a different voter should Kamala Harris win the election, are actively depriving Michigan voters, including the members of ACLU, of their fundamental right to vote free from intimidation, harassment, threats, or other forms of coercion. Defendants have already prevented Michiganders from casting their vote free from intimidation, threats, harassments, and coercion and their conduct threatens to prevent further Michiganders from exercising their right to vote altogether.

3. Defendants' illegal recording of voters, including following a voter to her car and other intimidating conduct has discouraged and threatens to deprive future individuals who are members of the ACLU of the opportunity to cast their ballots and having them counted without undue burden.

4. Plaintiff alleges that Defendants' campaign of voter intimidation violates the Ku Klux Klan Act of 1871 and Section 11(b) of the Voting Rights Act, and Article II, Section 4 of the Michigan Constitution. Immediate relief is necessary. It has long been recognized that "voting is of the most fundamental significance under our constitutional structure." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (same). "No

---

[6] Nathan Layne, Joseph Tanfani & Ned Parker, *In U.S. Swing States, Officials Brace for Conspiracy Theories and Violence*, REUTERS (Oct. 30, 2024, 10:09 PM), https://www.reuters.com/world/us/us-swing-states-officials-brace-conspiracy-theories-violence-2024-10-30/.

right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Courts have recognized "[v]oter intimidation presents an ongoing threat to the participation of minority individuals in the political process, and continues to pose a far greater danger to the integrity of that process than" do purported instances of election fraud, which are extraordinarily scarce.[7] *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 671 F. Supp. 2d 575, 578-79 (D.N.J. 2009), *aff'd* 673 F.3d 192 (3d Cir. 2012), *cert. denied* 568 U.S. 1138 (2013).

5. The ACLU brings this action to put a stop to Defendants' actions that violate federal and Michigan law and unduly burden the fundamental constitutional right of individuals, including those that it serves, to cast their ballot and have it counted free from intimidation, harassment, threats, or other forms of coercion.

6. Voting is underway and the harm to similar registered voters' right to vote in Michigan is on-going. Defendants' actions must be enjoined immediately, particularly in light of the failure of law enforcement to adequately protect the rights of Michiganders from John Does illegal intimidating conduct.

**PARTIES**

7. Established in 1959, Plaintiff American Civil Liberties Union of Michigan ("ACLU") is the Michigan affiliate of the American Civil Liberties Union. The ACLU is a domestic, nonpartisan, and nonprofit corporation organized for the civic, protective, or improvement purpose of protecting rights guaranteed by the United States and Michigan Constitutions. The mission of the ACLU is to

---

[7] A meticulous study found that incidents of alleged voter fraud were largely either unfounded or traceable to election administration errors rather than intentional voter misconduct. Justin Levitt, *The Truth About Voter Fraud*, The Brennan Ctr. for Just. (Nov. 9, 2007), https://www.brennancenter.org/our-work/research-reports/truth-about-voter-fraud (concluding, *inter alia*, that "it is more likely that an" American "will be struck by lightning than that he will impersonate another voter at the polls.").

realize the promise of the Bill of Rights for all citizens and expand the reach of its guarantees to new areas through public education, advocacy, and organization. The ACLU is a membership organization.

8. The ACLU seeks to ensure an easy and equal right to vote for every citizen and encourages its members and the people of Michigan to exercise their right to vote. The ACLU works to shape public policy and promotes full and fair access to the ballot, including, for example, by supporting and advocating for the 2022 ballot proposal that expanded protections for the fundamental right to vote in the Michigan Constitution.

9. The ACLU dedicates substantial time, effort, and resources to voter education and the protection of voting rights. Defendants' intimidating and harassing conduct directly frustrates the ACLU's core mission of ensuring access to the vote by attempting to intimidate voters from exercising their right to vote free of fear and intimidation. Defendants' intimidating and harassing conduct also harm the ACLU's ability to fulfill its mission to educate and encourage voting by diverting ACLU resources from other aspects of its mission. The ACLU is being forced to devote staff and financial resources to identifying, educating, and aiding its members who may be subject to such intimidating and harassing conduct.

10. As part of its mission to ensure that every Michigander votes without barriers, the ACLU of Michigan has three lawyers on duty during election day, all of whom are working in some capacity with the non-partisan 866-OUR-VOTE voter protection hotline to help ensure that voters are informed regarding how and when to vote and that errors or mistakes by election workers or other issues do not prevent them from doing so. The ACLU of Michigan also has six organizers or field staff similarly assisting the hotline with logistical issues, helping ensure, for example, that polling stations are functioning smoothly. In order to respond to Defendants' conduct, several of these staff members have been forced to step away from their duties on the voter protection hotline and redirect their efforts

towards responding to Defendants' conduct, thus undermining the ACLU of Michigan's efforts to ensure that more quotidian matters relating to the voting rights and ability to vote for voters throughout Michigan are addressed in a timely and effective way, thus reducing the likelihood that any Michigander is denied their fundamental right to vote for any reason.

11. Defendants John Doe 1 through 6 are unnamed individuals who are engaging in the aforementioned intimidating behavior, one of whom was concealing their face while engaging in this intimidating conduct.

## JURISDICTION AND VENUE

12. Plaintiff brings this action under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 52 U.S.C. § 10307(b) to redress the deprivation, under the color of state law, of rights secured by the United States Constitution.

13. Plaintiff ACLU of Michigan has standing to enforce these rights and all rights asserted herein.

14. This Court has subject matter jurisdiction over this action under to 28 U.S.C. § 1331 because this action arises under federal law, and under 28 U.S.C. § 1343 because this action requests equitable or other relief under statues protecting the right to vote and civil right. This Court also has the power to exercise supplemental jurisdiction over state law claims heard in conjunction with federal question cases. 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over Defendants as a creature of Michigan. Mich. Comp. Laws § 600.705.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

17. This Court has the authority to provide the emergency declaratory and injunctive relief

requested pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

18. The allegations herein justify immediate temporary relief in order to prevent irreparable harm to Plaintiff and its members. In light of the failure of law enforcement to address this illegal behavior earlier today, an injunction against John Does' intimidation tactics is the only way to protect Michigan voters from intimidation, harassment, threats, and coercion that has discouraged voters from participating in the election.

## STATEMENT OF FACTS

**The Right to Vote Is Protected by Law**

19. The right to vote in an election is guaranteed by, *inter alia*, the First, Fourteenth, and Fifteenth Amendments to the United States Constitution, as well as by Article II, Section 4 of the Michigan Constitution.

20. The Ku Klux Klan Act of 1871 (the "Ku Klux Klan Act") was the last of the Enforcement Acts—legislation passed during Reconstruction to protect the suffrage rights of newly freed slaves, including by protecting them and their supporters from violence, intimidation, and harassment.

21. The Ku Klux Klan Act, 42 U.S.C. § 1985(3), provides for damages and equitable relief "if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of . . . an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy." 42 U.S.C. § 1985(3).

22. The Act provides that an action will lie against the conspirators so long as "one or more persons engaged" in the conspiracy "do, or cause to be done, any act in furtherance of the object of such

conspiracy." *Id*.

23.     Even as to those persons who do not directly participate in those activities, the Ku Klux Klan Act makes it unlawful to conspire with others to promote, organize, and otherwise facilitate those efforts.

24.     The Voting Rights Act protects against intimidation in both elections and registration efforts.  Section 11(b) of the Voting Rights Act prohibits actual or attempted "[i]ntimidation, threats, or coercion" against a person, either "for voting or attempting to vote" or "for urging or aiding any person to vote or attempt to vote."  52 U.S.C. § 10307(b).  Section 11(b) authorizes private suits against private actors, even in the absence of any action by a state or state official.  *Id*.

25.     Invasions of physical space and intimations of possible future violence, prosecution, or legal action based on a voter's presence at the polls constitute unlawful voter intimidation.  *See, e.g., Ohio Democratic Party v. Ohio Republican Party*, 2016 WL 6542486, at *2 (N.D. Ohio Nov. 4, 2016) (granting a Temporary Restraining Order prohibiting voter intimidation activities, including but limiting to "[f]ollowing, taking photos of, or otherwise recording voters" and "[i]nterrogating, admonishing, interfering with, or verbally harassing voters"); *U.S. by Katzenbach v. Original Knights of Ku Klux Klan*, 250 F. Supp. 330, 334 (E.D. La. 1965) (pattern of acts and threats of physical violence constituted intimidation of voter's attempt to exercise their civil rights); *United States v. Clark*, 249 F. Supp. 720 (S.D. Ala. 1965) (baseless arrests and prosecutions of Black citizens seeking to vote and voter registration volunteers declared unlawful and violated voters right to vote); *TRO* at 2*, Daschle v. Thune*, CIV 04-4177, (D.S.D. Nov. 2, 2004) ("*Daschle* TRO"), available at https://www.brennancenter.org/sites/default/files/2020-07/2004%20Daschle%20TRO.pdf (entering a Temporary Restraining Order prohibiting a Senate candidate and his supporters from continuing to "follow[] Native Americans from the polling places," "copy the license plates of Native Americans

driving to the polling places," and record "the license plates of Native Americans driving away from the polling places").

26. The Michigan Constitution guarantees the fundamental right to vote for all qualified citizens, providing that all U.S. citizens "qualified to vote in Michigan shall have the following rights: (a) The fundamental right to vote, including but not limited to the right, once registered, to vote a secret ballot in all elections. No person shall: (1) enact or use any law, rule, regulation, qualification, prerequisite, standard, practice, or procedure; (2) engage in any harassing, threatening, or intimidating conduct; or (3) use any means whatsoever, any of which has the intent or effect of denying, abridging, interfering with, or unreasonably burdening the fundamental right to vote." Mich. Const. Art. II, § 4 (1)(a).

27. It is a federal crime, punishable by financial penalties and imprisonment, to intimidate voters in a presidential election. 18 U.S.C. § 594. Michigan has likewise criminalized such behavior, making it illegal to "attempt, by means of bribery, menace, or other corrupt means or device, either directly or indirectly, to influence an elector in giving his or her vote, or to deter the elector from, or interrupt the elector in giving his or her vote at any election" held in Michigan. Mich. Comp. Laws § 168.932(a).

28. In addition to criminalizing voter intimidation, Michigan has also aimed to make polling places safe and neutral zones by restricting an individual's ability to bring guns in public spaces used for polling places, including schools and courts. Mich. Comp. Laws §§ 750.237a, 28.425o(a); Mich. R. Admin. Order 2001-1. It is also a crime to conduct campaign activities within 100 feet of a polling place, including (i) verbally campaigning for a political position, (ii) displaying or distributing unapproved election materials, or (iii) soliciting gifts or signatures for petitions. Mich. Comp. Laws § 168.744.

29. In a letter to law enforcement officials issued on October 10, 2024, Michigan's Attorney General warned law enforcement to be vigilant in responding to conduct that would impermissibly deter Michigan residents from voting, or otherwise interfere with the electoral process.[8] The Michigan Attorney General specifically warns that it is illegal for persons to "use video cameras, cell phone cameras or video recording, cameras, television or recording equipment at an early voting site or polling place."[9]

**Poll Watching Is Protected, Intimidation Is Not**

30. Despite significant legislative activity aimed at allowing people to register to vote and cast their ballot without fear of actual or attempted intimidation, threats, or coercion, efforts to intimidate voters have persisted. Unfortunately, Defendants actions today represent a continuation of a decades long pattern of intimidating conduct, especially targeting minority communities in swing states.

**Defendants' Following and Recording Voters Is Unlawful And Has Intimidated and Threatened Voters, and Will Intimidate and Threaten ACLU Members**

31. Defendants have conspired with each other to prevent by force, intimidation, and threat, citizens, like those who are members of the ACLU, who are lawfully entitled to vote, from participating in the election and having their vote counted by engaging in going between polling places, recording voters illegal within polling places, following a voter to her car after voting, and making violent statements. Such actions constitute an attempt to intimidate, threaten, or coerce voters in a manner that prevents them from exercising their constitutional right to vote.

32. As a result of this intimidating and threatening conduct, voters have been intimidated at The First Presbyterian Church in Birmingham, Michigan; Derby Middle School in Birmingham,

---

[8] Attorney General Dana Nessel's Letter to Law Enforcement Officials (Oct. 10, 2024), https://www.michigan.gov/ag/-/media/Project/Websites/AG/releases/2024/October/Law-Enforcement-Guidance-101024-Final.pdf.
[9] *Id.* at 11.

Michigan; and Oakland School's Technical Campus, Southeast in Royal Oak, Michigan (all in Oakland County) and will be deprived of their right to vote absent injunctive relief. This includes members of the ACLU of Michigan. Further, without such relief, the ACLU will be forced to divert resources from other areas to protect the rights of its members who are facing such intimidating conduct.

33. The above-referenced conduct violates Section 11(b) of the Voting Rights Act, the Ku Klux Klan Act, and the Michigan Constitution.

34. These violations have caused Plaintiff irreparable harm and will continue cause such harm absent an immediate injunction.

## CAUSES OF ACTION

### Count I: Violation of Section 11(b) of the Voting Rights Act

35. Plaintiff hereby incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

36. Section 11(b) of the Voting Rights Act provides that:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 10302(a), 10305, 10306, or 10308(e) of this title or section 1973d or 1973g of Title 42.

> 52 U.S.C. § 10307(b).

37. Defendants violated Section 11(b) of the Voting Rights Act by engaging in the aforementioned intimidating and threatening behavior.

38. Such conduct intimidated, threatened or coerced, and/or attempted to intimidate, threaten, or coerce constitutionally eligible voters by instilling fear that they would face harm should they exercise their right to vote, or that they would lose their right to vote in a private manner free from video recording and public reprisals.

39. Defendants' actions, including illegally recording in polling locations, following a voter to her call as she exited a polling place, and making comments suggesting violence would befall the child of a voter should a particular candidate win the election, would intimidate an objectively reasonable individual.

40. Absent declaratory and injunctive relief, voters who are members of the ACLU will be subjected to intimidation or threats as Election Day progresses, and many may suffer unwarranted delays or denial of their right to vote in the upcoming election. This misconduct will force the ACLU to divert resources to protect such voters' right to vote and hampers the ACLU's ability to fulfill its mission.

41. Absent injunctive relief, Plaintiff will suffer irreparable harm. Plaintiff has no adequate remedy at law.

## Count II: Ku Klux Klan Act of 1871

42. Plaintiff hereby incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

43. Plaintiff brings a claim under the second clause of 42 U.S.C. § 1985(3), which provides that:

> [I]f two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

44. Defendants violated 42 U.S.C. § 1985(3) by knowingly, conspiring with each other to

intimidate and threaten voters with the purpose of preventing voters from exercising their constitutional right to vote.

45. Defendants' intimidating and threatening conducted, including illegally recording voters, blocking a family of voters from leaving a polling location, and suggesting violence would befall the child of a voter, constituted substantial steps in furtherance of the conspiracy.

46. Defendants knew or should have known at the time of this intimidating and threatening conduct that such acts would prevent or deter constitutionally eligible voters from exercising their right to vote in upcoming elections.

47. Defendants' intimidating and threatening conduct would intimidate or attempt to intimidate an objectively reasonable individual and discourage or prevent ACLU members and other similarly situated voters from exercising their constitutional right to vote.

48. Absent declaratory and injunctive relief, Defendants will continue to violate Section 1985(3) by conspiring to illegally record voters, follow voters, and suggest violence will befall voters' family, which intimidates or attempts to intimidate constitutionally eligible voters, resulting in unwarranted delays or denial of their right to vote in the upcoming elections. This misconduct will force the ACLU to divert resources to protect such voters' right to vote and hampers the ACLU's ability to fulfill its mission.

49. Absent injunctive relief, Plaintiff will suffer irreparable harm. Plaintiff has no adequate remedy at law.

### Count III: Michigan's Fundamental Right to Vote

50. Plaintiff hereby incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

51. Plaintiff brings a claim under Mich. Const. Art. II, § 4 (1)(a) which provides that:

(1) Every citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights:

(a) The fundamental right to vote, including but not limited to the right, once registered, to vote a secret ballot in all elections. No person shall: (1) enact or use any law, rule, regulation, qualification, prerequisite, standard, practice, or procedure; (2) engage in any harassing, threatening, or intimidating conduct; or (3) use any means whatsoever, any of which has the intent or effect of denying, abridging, interfering with, or unreasonably burdening the fundamental right to vote.

Any Michigan citizen or citizens shall have standing to bring an action for declaratory, injunctive, and/or monetary relief to enforce the rights created by this part (a) of subsection (4)(1) on behalf of themselves. Those actions shall be brought in the circuit court for the county in which a plaintiff resides. If a plaintiff prevails in whole or in part, the court shall award reasonable attorneys' fees, costs, and disbursements.

For purposes of this part (a) of subsection (4)(1), "person" means an individual, association, corporation, joint stock company, labor organization, legal representative, mutual company, partnership, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or any other legal entity, and includes an agent of a person.

52. Defendants violated Mich. Const. Art. II, § 4 (1)(a) by engaging in the aforementioned misconduct which harassed, threatened and intimidated voters and which resulted in interference with the fundamental right to vote.

53. Defendants' intimidating and threatening conduct would intimidate or attempt to intimidate an objectively reasonable individual and discourage or prevent ACLU members and other similarly situated voters from exercising their constitutional right to vote.

54. Absent declaratory and injunctive relief, ACLU members will be subjected to intimidation or threats on Election Day, and many may suffer unwarranted interference with or denial of their right to vote in the upcoming election. This misconduct will force the ACLU to divert resources to protect such voters' right to vote and hampers the ACLU's ability to fulfill its mission.

55. Absent injunctive relief, Plaintiff will suffer irreparable harm. Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that this Court:

56. Declare that the harassment or intimidation of voters at or outside of the polls during the November 2024 Election—including filming voters coming and going from the polls, coming within 100 feet of the entrance to any polling station or necessary points of ingress or egress from a polling station, following individuals to or from their cars to the polls, or any other form of menacing or intimation of violence while wearing a mask or otherwise—is contrary to law;

57. Temporarily restrain and enjoin Defendants and their affiliates and collaborators from pursuing any such conduct effective through November 5, 2024 as well as in connection with any post-Election Day processes related to the counting and/or certification of the vote;

58. Temporarily restrain and enjoin Defendants and their affiliates and collaborators from organizing efforts to engage in voter intimidation; including through the recording voters in or around polling places and following voters in around polling places.

59. Award attorney's fees and costs associated with this litigation; and

60. Grant such other relief as this Court may deem proper.

DATED THIS 5th day of November, 2024.

| | /s/Philip Mayor |
|---|---|
| Philip Mayor (P81691) | Rob Fram* |
| Daniel S. Korobkin (P72842) | COVINGTON & BURLING LLP |
| AMERICAN CIVIL LIBERTIES UNION FUND | 415 Mission Street, Suite 5400 |
| OF MICHIGAN | San Francisco, CA 94105 |
| 2966 Woodward Ave. | (415) 591-7025 |
| | RFram@cov.com |
| | Gregg Levy* |

Detroit, MI 48201  
(313) 578-6803  
pmayor@aclumich.org  


*Application for Admission* Forthcoming

Kait Demers*  
William Meyer*  
Hassan Ahmad*  
Stephanie King*  
COVINGTON & BURLING LLP  
850 Tenth Street, NW  
Washington, DC 20001  
(202) 662-5292  
GLevy@cov.com  
(202) 662-5896  
KDemers@cov.com  
(202) 662-5386  
WMeyer@cov.com  
(202) 662-5514  
HAhmad@cov.com  
(202) 662-5305  
StKing@cov.com