IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| The American Civil Liberties Union of Michigan, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>John Does 1-6,<br><br>Defendants. | Civ. No. _____<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND EMERGENCY DECLARATORY AND INJUNCTIVE RELIEF** |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff hereby moves this Court to enter an emergency Temporary Restraining Order granting the temporary relief sought in Plaintiffs' Complaint filed in this action on November 5th, 2024. In particular, Plaintiffs respectfully seeks a Temporary Restraining Order restraining and enjoining Defendants—as well as their agents, employees, successors, and attorneys, and all persons in active concert and participation with them—from advancing their conspiracy to intimidate, threaten, harass, or coerce voters, and interfere with their fundamental right to vote, in violation of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b); the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3); and Article II, § 4 of the Michigan Constitution.

Plaintiff is unable to give notice as it is unsure the identities of the John Doe Defendants.

This motion is submitted concurrently with a Complaint for Temporary Restraining Order and Emergency Declaratory and Injunctive Relief and a Memorandum in Support of Motion for Temporary Restraining Order and Emergency Declaratory and Injunctive Relief, which are hereby incorporated into this motion by reference.

DATED THIS 5th day of November, 2024.

/s/Philip Mayor

| | |
|---|---|
| Theresa Lee* <br> AMERICAN CIVIL LIBERTIES UNION FOUNDATION <br> 125 Broad Street <br> New York, NY 10004 <br> tlee@aclu.org <br><br> Philip Mayor (P81691) <br> Daniel S. Korobkin (P72842) <br> AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN <br> 2966 Woodward Ave. <br> Detroit, MI 48201 <br> (313) 578-6803 <br> pmayor@aclumich.org <br><br> *Application for Admission forthcoming | Rob Fram* <br> COVINGTON & BURLING LLP <br> 415 Mission Street, Suite 5400 <br> San Francisco, CA 94105 <br> (415) 591-7025 <br> RFram@cov.com <br><br> Gregg Levy* <br> Kait Demers* <br> William Meyer* <br> Hassan Ahmad* <br> Stephanie King* <br> COVINGTON & BURLING LLP <br> 850 Tenth Street, NW <br> Washington, DC 20001 <br> (202) 662-5292 <br> GLevy@cov.com <br> (202) 662-5896 <br> KDemers@cov.com <br> (202) 662-5386 <br> WMeyer@cov.com <br> (202) 662-5514 <br> HAhmad@cov.com <br> (202) 662-5305 <br> StKing@cov.com <br><br> *Attorneys for Plaintiffs* |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| The American Civil Liberties Union of Michigan, on behalf of themselves and all others similarly situated and American Civil Liberties Union Foundation,<br><br>   Plaintiffs,<br>vs.<br><br>John Does 1-6,<br><br>   Defendants. | Civ. No. _____<br><br>**BRIEF IN SUPPORT OF MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND EMERGENCY DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

  The need to maintain safety and security during the present election is acute. Numerous statements have circulated in recent days, threating disruption of the voting process, sometimes in violent tones. Indeed, in a virtual meeting for prospective poll workers on September 10th, the RNC's director of election integrity for Michigan proclaimed that she so distrusted the Detroit election infrastructure that "if I could get away with … burning [Detroit] to the ground, I would try."[1] The conduct at issue in this emergency application has unfolded amidst this disturbing context.

  Plaintiff seeks emergency relief from this Court to remedy a serious, and otherwise irreparable, injury: the loss of its members' right to vote freely for the candidates of their choice.

---

[1] Nathan Layne, Joseph Tanfani & Ned Parker, *In US swing states, officials brace for conspiracy theories and violence*, REUTERS (Oct. 30, 2024), https://www.reuters.com/world/us/us-swing-states-officials-brace-conspiracy-theories-violence-2024-10-30/.

1

Defendants followed and filmed voters, including inside the polling building, and threatened violence against a voter's family members, intimidating voters and unduly burdening their constitutional right to vote.

This behavior, if permitted to continue, this could intimidate voters and unduly burden their constitutional right to vote and without relief, potentially depriving them of their right to vote.

The ACLU of Michigan is a member-based organization with approximately 31,504 members in Michigan, 7,263 in Oakland County, 262 in Birmingham, and 914 in Royal Oak, most or all of whom are registered voters who are politically engaged and particularly high-propensity voters. As a result of Defendants' actions, members of the ACLU of Michigan are likely to be intimidated or burdened when voting and, as a result, may not vote or have their vote counted.

As a result of Defendants' actions, Plaintiff organizations have diverted time, energy, and resources from its mission-focused work to remedy the violations of the rights of their members.

In the absence of a Temporary Restraining Order halting this intimidation, members of the ACLU of Michigan, and many other voters will be disenfranchised or will have their fundamental rights unduly burdened today and Plaintiff the ACLU of Michigan will be prevented from carrying out its core mission of defending individuals' right to the elective franchise. Plaintiffs therefore respectfully request that this Court order Defendants John Does 1-6 to cease the harassment or intimidation of voters at or outside of the polls during the November 2024 Election—including filming voters coming and going from the polls, coming within 100 feet of the entrance to any polling station or necessary points of ingress or egress from a polling

station, following individuals to or from their cars to the polls, or any other form of menacing or intimation of violence while wearing a mask or otherwise immediately.

## STATEMENT OF FACTS

Defendants, engaged in intimidating behavior including travelling to multiple polling locations and illegally recording voters inside polling locations, following a voter to her car as she exited a polling place, and threatening that violence may befall the child of a different voter should Kamala Harris win the election.

## ARGUMENT

I. **A Temporary Restraining Order Should Issue Ordering Defendants to Cease the Harassment or Intimidation of Voters at or Outside of the Polls During the November 2024 Election.**

Emergency injunctive relief is warranted when a plaintiff demonstrates: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the equities balance in the plaintiff's favor; and (4) that preliminary relief would serve the public interest. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008); *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012); Fed. R. Civ. P. 65(b).

To obtain preliminary injunctive relief, a complainant need show only a likelihood of success on the merits; she need not demonstrate actual success. *See Winter,* 555 U.S. at 32. As explained below, Plaintiffs are likely to succeed on the merits of all their claims.

A. <u>Plaintiffs Are Likely to Prevail on the Merits of their Arguments that Defendants' Actions Violate Voters' Statutory and Constitutional Rights.</u>

Voting is a fundamental right. "There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014); *see also Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (recognizing voting as a "fundamental political right . . . preservative of all rights"). Not only is the right to vote

3

fundamental, but the "right to vote freely for the candidate of one's choice is of the essence of a democratic society." *Reynolds*, 377 U.S. at 555.

This fundamental right is explicitly enshrined in the Michigan Constitution, which declares that "[e]very citizen of the United States who is an elector qualified to vote in Michigan shall have the . . . fundamental right to vote, including but not limited to the right, once registered, to vote a secret ballot in all elections. No person shall: (1) enact or use any law, rule, regulation, qualification, prerequisite, standard, practice, or procedure; (2) engage in any harassing, threatening, or intimidating conduct; or (3) use any means whatsoever, any of which has the intent or effect of denying, abridging, interfering with, or unreasonably burdening the fundamental right to vote." Mich. Const. Art. II, § 4 (1)(a). This provision can be enforced by "[a]ny Michigan citizen or citizens." *Id.*

Congress also recognizes the importance of the right to vote and has enacted legislation to ensure that citizens may exercise this right free from intimidation. Specifically, both the Voting Rights Act of 1965 and the Ku Klux Klan Act of 1871 prevent state and private actors from using intimidation to deter or influence those exercising their right to vote freely for the candidates of their choice. *See* 52 U.S.C. § 10307(b); 42 U.S.C. § 1985(3).

The Supreme Court has also recognized legislatures' authority to protect the free exercise of voting rights, even when doing so burdens another's constitutional rights. *See Burson v. Freeman*, 504 U.S. 191, 211 (1992) (finding in favor of protecting voting rights over unrestricted free speech rights where "the exercise of free speech rights conflict[ed] with another fundamental right, the right to cast a ballot in an election free from the taint of intimidation and fraud."). Preventing voter intimidation is a "rare case" in which certain restrictions on free speech survive strict scrutiny. *Id*.

4

Michigan law also makes it illegal to "attempt, by means of bribery, menace, or other corrupt means or device, either directly or indirectly, to influence an elector in giving his or her vote, or to deter the elector from, or interrupt the elector in giving his or her vote at any election" held in Michigan. Mich. Comp. Laws § 168.932(a).

These backdrop principles undergird Plaintiffs' arguments that they are likely to prevail on each of their claims that Defendants' conduct is illegal and unconstitutional.

i. **Plaintiffs Are Likely to Prevail on their Claim that Defendants' Actions Violate Section 11(b) of Voting Rights Act of 1965.**

Section 11(b) of the Voting Rights Act, as amended and codified, provides that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." 52 U.S.C. § 10307(b).

Section 11(b) "on its face[,] prohibits any intimidation, threat, or coercion, whether done by a public official or by a private individual." *Whatley v. City of Vidalia*, 399 F.2d 521, 526 (5th Cir. 1968). It also provides a private cause of action. *See Rhodes v. Siver*, 2021 WL 912393, at *1 (E.D. Mich. Mar. 10, 2021) (collecting cases); *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 509 (S.D.N.Y. 2021) ("The provision applies to private conduct and can be enforced through suit by a private individual."); *see also* 28 U.S.C. § 1343(a)(4) (providing private cause of action "under any Act of Congress providing for the protection of civil rights, including the right to vote").

Voter intimidation is not limited to confrontations at the polling place. Courts have broadly interpreted the statutory terms "threaten[ing] to make use of any force, violence, or tactic of coercion or intimidation" to find that voter intimidation "can be achieved through manipulation and suggestion" and through "subtle, rather than forcefully coercive means."

5

*United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1265 (9th Cir. 2012) (interpreting Cal. Elec. Code § 18540). Moreover, whether the intimidating behavior "was intended or simply the result of excessive zeal is not the issue, [so long] as the result was the intimidation of prospective . . . voters." TRO at 2, *Daschle v. Thune*, CIV 04-4177, (D.S.D. Nov. 2, 2004) ("*Daschle* TRO"), available at https://www.brennancenter.org/sites/default/files/2020-07/2004%20Daschle%20TRO.pdf (entering a Temporary Restraining Order prohibiting a Senate candidate and his supporters from continuing to "follow[] Native Americans from the polling places," "copy the license plates of Native Americans driving to the polling places," and record "the license plates of Native Americans driving away from the polling places"); *see also Tan Duc Nguyen*, 673 F.3d at 1265 (finding that a misleading letter sent by individuals associated with a candidate targeted to voters of the opposing party warning that their personal information would be collected by the government and potentially accessed by anti-immigration organizations was sufficient for a district court to find a fair probability that the state voter intimidation statute had been violated); *Ohio Democratic Party v. Ohio Republican Party*, 2016 WL 6542486, at *2 (N.D. Ohio Nov. 4, 2016) (entering a Temporary Restraining Order prohibiting voter intimidation activities recognizing the various forms that intimidation can take).

Further, Plaintiffs have established a connection between the alleged intimidation and a voting-related activity, which may include a range of activities beyond casting a ballot. *See* 52 U.S.C. § 10310(c)(1) (VRA provision defining voting to include "all action necessary to make a vote effective in any . . . election."). By filming voters as they were in polling places, Defendants intimidated individuals that the ACLU of Michigan serves, interfering with their ability to cast a ballot and causing one voter to ask for a poll worker escort out of the polling cite. Section 11(b) of the Voting Rights Act was specifically designed to prevent this type of

6

behavior.

Congress, moreover, enacted Section 11(b) to avoid "requir[ing] proof that racial discrimination motivated the intimidation, threats, or coercion." *Willingham v. Cnty. of Albany*, 593 F. Supp. 2d 446, 462 (N.D.N.Y. 2006). Furthermore, "§ 11(b) does not say that a defendant's actions must have been 'for the purpose of' interfering with the plaintiff's right to vote." *Rhodes v. Siver*, 2021 WL 1565137, at *4 (E.D. Mich. Feb. 1, 2021), *report and recommendation adopted in part*, 2021 WL 912393 (E.D. Mich. Mar. 10, 2021); *see also LULAC - Richmond Region Council 4614 v. Pub. Interest Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *3-4 (E.D. Va. Aug. 13, 2018) (finding no requirement of specific intent to interfere with voting rights); *Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 117 (S.D.N.Y. 2023) (" . . . even if a showing of intent were required under Section 11(b), *which it is not* . . . " (emphasis added)).

Faced with similar acts in connection with the 2016 presidential election, the Northern District of Ohio found that "Donald Trump's comments encouraging rally attendees to monitor 'certain areas,' as well as promises from Mr. Trump's supporters to aggressively patrol polling places," constituted intimidation in violation of Section 11(b) of the Voting Rights Act and Section 2 of the Ku Klux Klan Act. *Ohio Democratic Party*, 2016 WL 6542486, at *1-2. The court rejected defendants' arguments that these statements did not constitute evidence of intimidating or harassing voters and granted plaintiff's motion for a TRO. *Id*. at *2.

  ii.  **Plaintiffs Are Likely to Prevail on their Claim that Defendants' Actions Violate 42 U.S.C. § 1985(3).**

Section 2 of the Ku Klux Klan (KKK) Act, codified at 42 U.S.C. § 1985(3), safeguards essential liberties, including the right to vote, from conspiracies by private actors. One provision of § 1985(3) – which is known as the "Support or Advocacy Clause" – provides a cause of action

7

"if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of . . . an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy." 42 U.S.C. § 1985(3); *see Gaetz v. City of Riverside*, 2024 WL 1269311, at *11 (C.D. Cal. Mar. 22, 2024) ("In Section 1985(3) support-or-advocacy clause cases held to be sufficient, plaintiffs have advanced plausible claims that *specific* voters were intimidated from voting or giving their support or advocacy to a federal campaign, or have similarly alleged that a reasonable person would be plausibly intimidated by defendants' actions."); *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 486 n.30 (S.D.N.Y. 2020) ("[T]he Support or Advocacy Clause gives rise to an independent substantive right — the right to vote and participate in voting-related activities."); *see also Kennedy v. Meta Platforms, Inc.*, 2024 WL 4031486, at *11 (N.D. Cal. Sept. 3, 2024) (holding "state action is not a required element for a claim under the Support or Advocacy Clause").

Courts may and do grant injunctive relief for claims arising under the KKK Act. *See Daschle* TRO (citing *Brewer v. Hoxie Sch. Dist.*, 238 F.2d 91 (8th Cir. 1956)). When they do, "the Support or Advocacy Clause [of the KKK Act] is not limited to conspiracies involving racial or class-based animus." *Davis v. Cisneros*, 2024 WL 4611218, at *15 (W.D. Tex. Aug. 13, 2024); *see also Wohl*, 661 F. Supp. 3d at 124-25 ("[T]he clause at issue in the instant case is the second clause of 42 U.S.C. Section 1985(3) – *the Support or Advocacy Clause* – . . . *does not require a showing of racial animus*." (emphasis added)); *Kennedy*, 2024 WL 4031486, at *11 (observing that courts have often confused and conflated analysis of different provisions of the

8

statute and finding that "racial animus is not a required element of a cause of action under the Support or Advocacy Clause").

Plaintiffs have alleged that Defendants conspired to intimidate or deter voters from exercising their right to vote. Defendants have violated § 1985(3) by conspiring to prevent a legitimate voter from supporting a candidate in a federal election by force, intimidation, or threat, and by taking an act in furtherance of the conspiracy whereby a person has been "intimidated from voting or giving their support or advocacy to a federal campaign." *Gaetz*, 2024 WL 1269311, at *11.

To show the "conspiracy" between the Defendants, Plaintiffs have established that Defendants have acted in coordination to intimidate voters. Generally, courts look to the elements of civil conspiracy for guidance in order to find an "agreement" between the parties to prevent voting or to deliberately attempt to interfere with voting rights. *See, e.g.*, *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) (applying civil conspiracy principles to a § 1985(3) claim). Here, Plaintiffs allege that Defendants entered into an agreement and took substantial steps to carry out said agreement by following, filming, and harassing voters. Further, Plaintiffs allege that voters were in fact intimidated as a result of Defendants' actions filming at and around polling locations. As a result, this conspiracy prevented lawful voters from voting without intimidation. This is precisely the kind of behavior Section 2 of the KKK Act aims to prevent.

### iii. Plaintiffs Are Likely to Prevail on their Claim that Defendants' Actions Violate Article II, Section 4 of the Michigan Constitution.

Article II, Section 4 of the Michigan Constitution protects "[t]he fundamental right to vote" of each U.S. citizen "who is an elector qualified to vote in Michigan." Mich. Const. Art. II, § 4 (1)(a).

This right prohibits any "individual, association, corporation, joint stock company, labor

9

organization, legal representative, mutual company, partnership, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or any other legal entity" or their agent from "engag[ing] in any harassing, threatening, or intimidating conduct; or (3) us[ing] any means whatsoever, any of which has the intent or effect of denying, abridging, interfering with, or unreasonably burdening the fundamental right to vote." *Id.*

Because of Defendants' filming and following voters, individuals that the ACLU of Michigan serves were harassed and intimidated and therefore burdened from participating in the November 2024 election. Defendants' actions had the effect of interfering with or unreasonably burdening Plaintiffs' right to vote thereby violating Article II, Section 4 of the Michigan Constitution.

      B.      <u>The ACLU of Michigan Will Suffer Irreparable Harm in the Absence of a Temporary Restraining Order.</u>

Courts routinely find that any burden on, or impediment to, the right to vote is an irreparable harm. "Because there can be no 'do-over' or redress of a denial of the right to vote after an election, denial of that right weighs heavily in determining whether plaintiffs would be irreparably harmed absent an injunction." *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). *See also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (noting, in an election case, that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (finding that denial of the right to vote is "irreparable harm").

Indeed, the Sixth Circuit has unequivocally found that deprivation of the right to vote constitutes irreparable harm. *See Obama for Am.*, 697 F.3d at 436 ("A restriction on the fundamental right to vote . . . constitutes irreparable injury."); *Michigan State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 669 (6th Cir. 2016) (same); *A. Philip Randolph Inst. v. Husted*,

10

907 F.3d 913, 921 (6th Cir. 2018) (reversed in part on other grounds) (same).  Even though some voters are ultimately able to overcome Defendants' intimidating conduct and cast their votes, those voters will still have suffered injury.  *See Wohl*, 512 F. Supp. at 516 (holding that the KKK Act and Voting Rights Act do not only prohibit threats and intimidation "that successfully prevents a person from voting . . . .").

Indeed, even the realistic risk that voters might be disenfranchised constitutes irreparable harm.  *See, e.g.*, *U.S. Student Ass'n Foundation v. Land*, 585 F. Supp. 2d 925, 943–44 (E.D. Mich. 2008), *aff'd* 546 F.3d 373 (6th Cir. 2008); *Spencer v. Blackwell*, 347 F. Supp. 2d 528, 537 (S.D. Ohio 2004) (holding, in a case where poll challenger conduct could contribute to chaos that could inhibit the right to vote, voters would suffer irreparable injury absent a temporary restraining order).

Unless Defendants' intimidating conduct, including following and filming voters, is enjoined, the ACLU of Michigan will be prevented from carrying out its core mission to defend and preserve the individuals' right to vote.  In the absence of a Temporary Restraining Order, the ACLU of Michigan's membership may have this right illegally infringed upon.

Accordingly, Plaintiffs and other eligible voters indisputably and irreparably will be harmed absent the issuance of a Temporary Restraining Order directing Defendants to cease their intimidation of voters, including following and filming voters near polling locations.

C. <u>The Balance of Equities Leans in Plaintiffs' Favor.</u>

Plaintiffs' members and others face the irreparable loss of the fundamental right to vote freely for the candidates of their choosing absent a Temporary Restraining Order.

In contrast, halting Defendants' filming of voters around polling locations is a reasonable remedy that imposes little if any burden on Defendants.  The balance of equities will still fall in Plaintiffs' favor even if this Court weighs the Defendants' First Amendment rights against

11

Plaintiffs' First and Fourteenth Amendment Rights. *See Burson*, 504 U.S. at 211 (upholding restriction on free speech where "the exercise of free speech rights conflict[ed] with . . . the right to cast a ballot in an election free from the taint of intimidation and fraud.").]

On balance, the ACLU of Michigan would suffer far greater harm from Defendants burdening the right to vote of the individuals the ACLU of Michigan serves than Defendants would face in halting this behavior. In the absence of a Temporary Restraining Order, voters will be stripped of their voices in the political process and will have no input regarding who will represent them and their communities.

D. The Public Interest Favors the Issuance of a Temporary Restraining Order.

"[T]here is the highest public interest in the due observance of all the constitutional guarantees . . . ." *United States v. Raines*, 362 U.S. 17, 27 (1960); *see also Obama for Am.*, 697 F.3d at 436–37 ("[T]he public has a strong interest in exercising the fundamental political right to vote." (internal quotations omitted)); *A. Philip Randolph Inst. v. Husted*, 907 F.3d at 922 ("There is a great public interest in not denying voters the opportunity to vote . . . ."). The right to vote is one of the most fundamental constitutional guarantees. *See Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Accordingly, the public interest will be served only by allowing all registered voters to cast ballots in this election free from intimidation, interference, or unreasonable burdens. Without the requested relief, citizens of Oakland County will be denied the same opportunity to participate in the electoral process as other Americans. This Court should not allow such a manifest miscarriage of justice.

Courts consistently have held that granting a preliminary injunction serves the public interest when it helps permit "as many qualified voters to vote as possible." *Obama for Am.*, 697 F.3d at 437; *see also League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) ("The right to vote is a fundamental right, preservative of all rights.") (internal quotations

omitted); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request a Temporary Restraining Order requiring Defendants to cease their intimidating actions, including following and filming voters immediately and to refrain from such conduct through November 5, 2024 as well as in connection with any post-election day processes related to the 2024 election.

DATED THIS 5th day of November, 2024.

| | /s/Philip Mayor |
|---|---|
| Theresa Lee* | Rob Fram* |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION | COVINGTON & BURLING LLP |
| 125 Broad Street | 415 Mission Street, Suite 5400 |
| New York, NY 10004 | San Francisco, CA 94105 |
| tlee@aclu.org | (415) 591-7025 |
| | RFram@cov.com |
| Philip Mayor (P81691) | |
| Daniel S. Korobkin (P72842) | Gregg Levy* |
| AMERICAN CIVIL LIBERTIES UNION FUND OF | Kait Demers* |
| MICHIGAN | William Meyer* |
| 2966 Woodward Ave. | Hassan Ahmad* |
| Detroit, MI 48201 | Stephanie King* |
| (313) 578-6803 | COVINGTON & BURLING LLP |
| pmayor@aclumich.org | 850 Tenth Street, NW |
| | Washington, DC 20001 |
| | (202) 662-5292 |
| *Application for Admission forthcoming | GLevy@cov.com |
| | (202) 662-5896 |
| | KDemers@cov.com |
| | (202) 662-5386 |
| | WMeyer@cov.com |
| | (202) 662-5514 |
| | HAhmad@cov.com |
| | (202) 662-5305 |
| | StKing@cov.com |
| | |
| | *Attorneys for Plaintiffs* |

13