UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN,**<br><br>Plaintiff,<br><br>vs.<br><br>**JOHN DOES 1–6,**<br><br>Defendants. | 2:24-CV-12950-TGB-APP<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br>**(ECF NO. 2)** |

On November 5, 2024, Plaintiff American Civil Liberties Union of Michigan filed a Complaint on behalf of itself and its members against Defendants, John Does 1-6, alleging that the John Doe Defendants have engaged in intimidating behavior including travelling to multiple polling locations and illegally recording voters inside polling locations, following a voter to her car as she exited a polling place, and threatening that violence may befall the child of a different voter should Kamala Harris win the election. ECF No. 1. Plaintiff alleges claims for violation of (1) Section 11(b) of the Voting Rights Act, (2) the Ku Klux Klan Act of 1871, and (3) Michigan's Fundamental Right to Vote. *Id.* Plaintiff requests that the Court declare that the harassment and intimidation of voters at or outside the polls during the November 2024 Election is contrary to law and temporarily restrain and enjoin Defendants and their affiliates and

collaborators from pursuing such conduct and organizing efforts to engage in voter intimidation. *Id.*

Plaintiff also filed a Motion for Temporary Restraining Order to order Defendants to cease the harassment and intimidation at or outside the polls during the November 2024 election as well as in connection with any post-election day processes related to the 2024 election. ECF No. 2.

For the reasons that follow, Plaintiff's Motion for Temporary Restraining Order is **GRANTED.**

## I. FACTUAL ALLEGATIONS

The ACLU asserts that Defendants are actively engaged in activities to threaten, intimidate, harass, and deter voters from participating in the 2024 election. ECF No. 1, PageID.3. The ACLU submitted four affidavits from Michigan residents in support.

The ACLU submitted the affidavit of Steven Raimi. Raimi served as a poll watcher on Election Day in four different locations. ECF No. 2-1, PageID.32. At the polling location in Derby Middle School, Birmingham, Raimi saw three men with cameras who had been filming people going into and out of the polling station. *Id.* One of them was wearing a baseball cap that said "DON'T ANNOY ME, I'M AN ASSHOLE. MY RIGHTS DON'T STOP WHERE YOUR FEELINGS START." *Id.* The other two were described as wearing "patriotic" shirts. *Id.* Raimi told them they could not film people coming in and out of a

polling location, but they responded that it was their First Amendment right to film. *Id.*

Other people passing out flyers near the polling station told Raimi that the three men had blocked a family from leaving the polling station, despite the family asking them not to record them. *Id.* At the polling station at Oakland Schools Technical Campus Southeast, in Royal Oak, Michigan, Raimi saw one of the same three men who had been filming. *Id.* The man was now wearing a gaiter that covered his nose and mouth and was accompanied by three other individuals who appeared intimidating to Raimi. *Id.* at PageID.33. Raimi indicated the individuals had cameras and were filming the polling location. *Id.* The precinct supervisor instructed the men not to film but they once again stated that it was their First Amendment right to record. *Id.* Raimi told them not to film as well but was met with the same response. *Id.* The police arrived, and the individuals left 10 to 15 minutes later, though two of them continued filming the movements of the police as they departed. *Id.* at PageID.34–35. Raimi believes the individuals were part of an organized effort to invite negative responses or anger from poll workers and voters and to capture these responses on video. *Id.* at PageID.35.

The ACLU also submitted the affidavit of Nicolette Ago. ECF No. 2-1, PageID.39. Ago averred that she also went to vote at the Oakland Schools Technical Campus in Royal Oak, Michigan, around 2:00 p.m. on November 5, 2024. *Id.* When she arrived, she saw two men and one

3

woman recording voters using their phones. *Id*. The men wore masks covering their faces from the nose down. *Id*. Ago averred that she heard poll workers tell the individuals in question to leave. *Id*. The individuals responded that they were permitted to film because they were part of the "media." *Id*. Ago heard a poll worker call the police. *Id*.

As Ago went to vote, one of the masked men approached her and stood four or five feet away, filming. *Id*. A poll worker told the masked man to back away, as did Ago, but the man refused. *Id*. Ago said that she had a right to privacy while she voted, but the man responded: "You don't have a right to privacy while you're voting, I'm not moving." *Id*. Ago stepped out into the hallway because she was intimidated. *Id*. at PageID.40. The masked man stepped into the hallway, and Ago went back inside the polling area and voted. *Id*. Ago left, and told a police officer about what happened to her. *Id*. Ago reported that she drove by the polling place one hour later, and saw that while police cars were outside the building, the three people who had been filming her and the other voters were still standing outside of the polling place. *Id*.

The ACLU also submitted the affidavit of Lisa Feldberg. Feldberg averred that she voted at the First Presbyterian Church in Birmingham, Michigan, on November 5, 2024, around 1:00 p.m. ECF No. 2-1, PageID.41. Feldberg averred that at around 1:10 p.m., five white men and one white woman arrived in the hallway outside the polling room. *Id*. One man wore an American flag bandanna over his face, while the

4

others did not have their faces covered. *Id.* Feldberg averred that one man had a short beard and a black shirt, another wore a green shirt and had a grey beard, and another wore an orange vest and had a short beard. *Id.* Feldman averred that the men and the woman had phones with cameras which were recording video, and that the men and the women used "selfie sticks" to insert their phones into the polling room. *Id.* One of the people stepped into the polling room, but only by around a foot. *Id.* All "linger[ed] as a group" in the entryway to the polling room, and were loud and made noise. *Id.*

    Feldberg averred that because the group was blocking the door, voters had to "almost push past" the group to get into the polling room. *Id.* at PageID.42. Feldberg voted, then left the polling room. *Id.* One of the men in the group then followed Feldberg into the hallway. *Id.* Feldberg told the man, "[t]his is why we vote." *Id.* The man then put his phone a foot away from Feldberg's face, prompting Feldberg to tell him that he did not have her permission to film her. *Id.* The man responded: "Your request has been denied." *Id.* The woman in the group chimed in: "Oh, look at the reaction on her." *Id.* Feldberg averred that she went back into the polling room to be with her daughter. *Id.* Meanwhile, the group of people continued to film voters. *Id.* Voters asked why the group of people were there. *Id.*

    Feldberg told a poll worker that she was not comfortable walking to her car. *Id.* The poll worker responded by saying they had called the

police, and asked if Feldberg wanted someone to walk her out. *Id*. Feldberg agreed, and had a poll worker walk her out using a different exit. *Id*. As Feldberg got to her car, Feldberg saw the group of people following another voter to his car, and saw that they were filming Feldberg as well. *Id*. at PageID.42–43.

Feldberg averred that after this experience, she reported these events at a police station. *Id*. at PageID.43. Feldberg averred that the police told her that the group of people had not done anything illegal, and that there was not anything that the police could do "because it was free speech in a public place." *Id*.

The ACLU also submitted the affidavit of Loren Khogali, Executive Director of the ACLU. Khogali asserted that the ACLU has been informed by two witnesses, including one voter and one poll worker, that a group of 6 individuals have been visiting multiple polling locations in Oakland County, entering buildings where polling was going on, and filming voters coming and going against their will, including following voters to their cars while filming them, while refusing to stop filming when asked. ECF No. 2-1, PageID.36–37. Some voters have been sufficiently intimidated that they have sought to escape the polling station through alternate paths. *Id*. at PageID.37. The ACLU has had to divert resources to respond to and document voter intimidation that took place in Oakland County thereby reducing the amount of volunteers and

financial resources the ACLU could use towards core Election Day services for voters. ECF No. 2-1, PageID.37–38.

## II. ANALYSIS

Courts in the Sixth Circuit apply the same standard to a motion for a temporary restraining order (TRO) and a motion for a preliminary injunction. *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). Under that standard, the factors are: (1) whether the movants have a strong likelihood of success on the merits, (2) whether the movants would suffer irreparable injury absent a TRO or preliminary injunction, (3) whether granting the TRO or preliminary injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the TRO or preliminary injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

Having considered Plaintiff's motion for a temporary restraining order and emergency declaratory and injunctive relief, the Court has determined the following:

1. Plaintiffs have a likelihood of success on the merits.
2. Plaintiffs and other eligible voters will suffer irreparable harm in the absence of a temporary restraining order.
3. The balance of equities leans in the Plaintiffs' favor.
4. The public interest favors the issuance of a temporary restraining order.
5. Plaintiffs have no adequate remedy at law.

6. This Order was entered Ex Parte due to the fact that the hearing in this matter is scheduled for **Friday, November 8, 2024** at 2:00 p.m., and the Court finds that absent this Order, Plaintiffs will suffer irreparable harm by being deprived of their constitutional voting rights for the November 5, 2024 general election.

Accordingly, the Court hereby **ORDERS**:

1. A Temporary Restraining Order is issued.
2. Defendants are ordered to cease the harassment or intimidation of voters at or outside of the polls during the November 2024 Election—including filming voters coming and going from the polls, coming within 100 feet of the entrance to any polling station or necessary points of ingress or egress from a polling station, following individuals to or from their cars to the polls, or any other form of menacing or intimation of violence while wearing a mask or otherwise.
3. This Order shall remain in full force and effect until this Court specifically orders otherwise.
4. Plaintiff must serve a copy of the pleadings in this case and this Order no later than **Thursday, November 7, 2024** before **12:00 p.m.** Service may be provided electronically.
5. Defendant shall show cause before this Court on **Friday, November 8, 2024** at **2:00 p.m.**, why a preliminary or permanent injunction should not be ordered according to the

terms and conditions of this temporary restraining order and as requested in Plaintiffs' Complaint.

**IT IS SO ORDERED.**

Dated: November 5, 2024  /s/Terrence G. Berg
　　　　　　　　　　　　HON. TERRENCE G. BERG
　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE